ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL
OATA-2023-131[1]

| CONSEJO DE TITULARES DEL CONDOMINIO LAGUNA PLAZA<br><br>Demandantes Apelantes<br><br>v.<br><br>PASEO CARIBE COMMERCIAL, LLC, LAS BRISAS PROPERTY MANAGEMENT, INC., GEORGE LLC<br><br>Demandados Apelados | KLAN202300502 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm. SJ2023CV00017 (SALA 907)<br><br>Sobre: Entredicho Provisional; Injunction Preliminar y Permanente |

Panel integrado por su presidenta, la Juez Ortiz Flores, la Juez Brignoni Mártir y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de mayo de 2024.

Comparece la parte apelante, Consejo de Titulares del Condominio Laguna Plaza (en adelante, "Laguna Plaza"), para solicitarnos que se revise y revoque la *Sentencia* dictada y notificada el 20 de abril de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan, en la cual se desestimó la demanda en su totalidad por falta de legitimación activa y agotamiento de remedios administrativos.

Las partes apeladas Paseo Caribe Commercial, LLC (en adelante, Paseo Caribe), Las Brisas Property Management, Inc. (en adelante, Las Brisas) y George, LLC (en adelante, George) comparecieron mediante recurso de oposición.

Por los fundamentos que exponemos a continuación, se *confirma* la *Sentencia* apelada.

---

[1] Mediante la Orden Administrativa OATA-2023-131 se designa al Juez Joel A. Cruz Hiraldo en sustitución del Juez Carlos I. Candelaria Rosa.

**I**

El pasado 3 de enero de 2023, Laguna Plaza presentó una demanda de *Petición de Injunction* en contra de Paseo Caribe, Las Brisas y George.[2] En esencia, Laguna Plaza alegó que un local comercial propiedad de Paseo Caribe y que es administrado por Las Brisas, fue arrendado a George para operar un bar y discoteca y tiene bocinas instaladas en la parte exterior y área de la terraza. Argumentó que en ese establecimiento George opera de lunes a sábado con un horario de las 5:00 pm hasta las 2:00 am y domingos de 10:00 am a 2:00 am. Añadió que en el establecimiento George utiliza las bocinas del exterior para transmitir ruidos innecesarios y sonido fuerte, perturbante, intenso y frecuente de música y comunicaciones de bandas y "discjockeys" hasta las 2:00 am. Por esto y otras alegaciones, los residentes de Laguna Plaza reclamaron que no han podido descansar ni disfrutar de la intimidad del hogar y resienten estar expuestos a ruidos innecesarios y la alteración a la paz que resulta de estos.

Parte de los reclamos alegados por Laguna Plaza, están fundamentados en el "Código de Urbanismo del Municipio de San Juan" Ordenanza Núm. 7 Serie 2002-03, (en adelante, Código de Urbanismo), Ley Núm. 71-1940, según enmendada; también conocida como "Ley de Delitos contra la Paz Pública" o "Ley para Suprimir Ruidos Innecesarios", 33 LPRA sec. 1443; el artículo 247 del Código Penal, Ley Núm. 149-2004, 33 LPRA sec. 4875; el Reglamento Núm. 8019 de 9 de mayo de 2011 de la Junta de Calidad Ambiental (Reglamento para el Control del Ruido); y el artículo 277 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2761.

Así las cosas, el 9 de enero de 2023 Laguna Plaza presentó una *Moción en Solicitud de Orden* en la que informó al Tribunal de

---

[2] Apéndice 1 del Recurso de Apelación, pág. 1-10.

Primera Instancia que acudió a la Junta de Calidad Ambiental, (en adelante, JCA), para solicitar que enviaran un técnico oficial con un sonómetro que cumpliera con las normas de la American National Standards Institute que esté verificado y calibrado y que se cumpla con el protocolo establecido conforme a lo dispuesto por el Reglamento Núm. 8019. Sin embargo y según fue informado por la señora Yadira Rivera de la División de Querellas e Investigaciones de la JCA, esta le informó que no tenían empleados que ejecutaran esta función en horas no laborables. También, adujo Laguna Plaza que le notificó al Tribunal que, según fue informado por la JCA se requería una orden del Tribunal dirigida a la JCA para que enviaran un técnico con ese equipo en horas nocturnas. A estos fines, Laguna Plaza le solicitó al Tribunal que emitiera dicha *Orden* dirigida a la Junta de Calidad Ambiental.[3]

**El 9 de enero de 2023 el Tribunal mediante *Orden* emitida determinó que "[a]l tratarse de una solicitud de descubrimiento de prueba, se atenderá una vez se acredite el diligenciamiento de la orden y citación y comparezca la otra parte, de modo que pueda exponer su posición sobre dicha solicitud".[4] No obstante, los demandados recurridos nunca expusieron su posición en cuanto a dicha petición de Laguna Plaza y el Tribunal de Primera Instancia nunca resolvió la Moción.**

Posteriormente, el 13 de enero de 2023, Paseo Caribe y Las Brisas solicitaron la desestimación de la demanda alegando que Laguna Plaza no tenía legitimación activa para solicitar el remedio de *injunction* en contra de estos conforme a los estatutos invocados y que las causas de acción no eran justiciables por no agotar remedios administrativos.[5]

---

[3] Apéndice 3 del Recurso de Apelación, pág. 14-15.
[4] Apéndice 4 del Recurso de Apelación, pág. 16.
[5] Apéndice 5 del Recurso de Apelación, pág. 17-36.

El 17 de enero de 2023, el Tribunal de Primera Instancia celebró una vista mediante video conferencia que fue convertida en una sobre el estado de los procedimientos y argumentativa sobre la solicitud de desestimación. El foro primario concluyó que el caso se atendería únicamente al amparo del Artículo 277 del Código de Enjuiciamiento Civil, *supra*.[6]

Ulteriormente, George presentó su *Contestación a Reconvención de Petición* el 3 de abril de 2023 y Laguna Plaza presentó una *Contestación la Reconvención* presentada por George.[7] Laguna Plaza presentó una *Moción Informativa* en la que compareció el señor Guillermo Novo como actual presidente del Consejo de Titulares y ratificó la demanda presentada.[8]

El 12 de abril de 2023 George, radicó "*Moción Suplementando "Moción de Desestimación"*" y en la alternativa "*Urgente Solicitud de Orden*" alegando falta de legitimación activa y para que se le ordenara a Laguna Plaza que produjera en 24 horas copia de su Reglamento.[9] En adición, presentó "*Urgente Moción para que se Estime Sometida sin Oposición la "Moción de Desestimación"*.[10]

El 12 de abril de 2023 Laguna Plaza presentó *Moción Informativa y en Cumplimiento de Orden y sobre otros Asuntos*.[11] En esencia, sostuvo que según notificado al Tribunal anteriormente, que se desistía de las reclamaciones bajo el Código de Urbanismo del Municipio de San Juan, *supra,* la Ley Núm. 71-1940, *supra* y el Reglamento Núm. 8019, *supra.* Al desistir de toda reclamación que no esté bajo el palio del Artículo 277 del Código de Enjuiciamiento Civil, *supra,* se atendían la mayoría de las alegaciones de desestimación presentadas por las codemandadas-reconvenidas.

---

[6] Apéndice 8 del Recurso de Apelación, pág. 40-51.
[7] Apéndice 14,15,16 del Recurso de Apelación, pág. 76-118.
[8] Apéndice 17 del Recurso de Apelación, pág. 119-120.
[9] Apéndice 18 del Recurso de Apelación, pág. 121 – 126.
[10] Apéndice 19 del Recurso de Apelación, pág. 128-129.
[11] Apéndice 21 del Recurso de Apelación, pág. 131-134.

Sobre el tema de legitimación, que el Foro a *quo* anteriormente expresó que era materia de prueba en la vista de *injunction*, y era de los temas que se mantendrían en suspenso hasta celebrarse la vista, Laguna Plaza sostuvo que conforme a la presunción establecida en el artículo 54 de la Ley Núm. 129-2020, también conocida como la Ley de Condominios, 31 LPRA sec.1922z, (en adelante, Ley Núm. 2020), le competía a las partes demandadas-apeladas rebatir dicha presunción.

El 14 de abril de 2023, el Tribunal de Primera Instancia celebró la vista en su fondo sobre el *Injunction*.[12] Se le requirió a Laguna Plaza presentar evidencia que estableciera la autorización del Consejo de Titulares al presidente y/o la Junta para presentar la petición de interdicto por estorbo público y los elementos de dicho estatuto. Por su parte, las demandadas-apeladas no presentaron evidencia testifical o documental alguna.

**El 20 de abril de 2023, el Tribunal de Primera Instancia dictó *Sentencia* desestimando el caso en su totalidad por falta de legitimación activa del Presidente y la Junta de Directores del Consejo y, por no agotar remedios administrativos en el Departamento de Recursos Naturales.**[13] Así las cosas, el 5 de mayo de 2023, el co-apelado, George, presentó *Moción de Reconsideración y Solicitud de Enmiendas a Determinaciones de Hecho a Tenor con la Regla 43.1 de las de Procedimiento Civil*.[14] Mediante *Resolución* dictada el 11 de mayo de 2023 y notificada el 12 de mayo de 2023, el Tribunal de Primera Instancia dictó *No Ha Lugar* a *Moción de Reconsideración y Solicitud de Enmiendas a Determinaciones de Hecho a Tenor con la Regla 43.1 de las de Procedimiento Civil*.[15]

---

[12] Apéndice 25 del Recurso de Apelación, pág.175-182
[13] Apéndice 24 del Recurso de Apelación, pág. 138-174.
[14] Apéndice 26 del Recurso de Apelación, pág. 183-194.
[15] Apéndice 27 del Recurso de Apelación, pág. 195.

Inconforme con el dictamen del foro apelado, el 25 de octubre de 2023, Laguna Plaza presenta la siguiente apelación donde le imputa al Tribunal de Primera Instancia sendos señalamientos de error:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL CELEBRAR UNA VISTA EVIDENCIAR[I]A PARA QUE LAGUNA PLAZA PROBARA QUE EL PRESIDENTE ESTABA AUTORIZADO PARA REPRESENTAR AL CONSEJO DE TITULARES Y AL CONFERIR LEGITIMACIÓN ACTIVA A LAS CODEMANDADAS-APELADAS PARA IMPUGNAR LA DECISIÓN DE LA JUNTA DE DIRECTORES DE LAGUNA PLAZA DE SOLICITAR UN *INJUNCTION* EN REPRESENTACIÓN DEL CONSEJO.

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LA JUNTA DE DIRECTORES NO TENÍA FACULTAD PARA SOLICITAR *INJUNCTION* ESTATUTARIO POR ESTORBOS PÚBLICOS EN REPRESENTACIÓN DE TITULARES DEL CONSEJO DE LAGUNA PLAZA.

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE EL PRESIDENTE Y LA JUNTA DE DIRECTORES NO NOTIFICARON A LOS TITULARES DENTRO DE LOS TREINTA DÍAS SIGUIENTES A LA DETERMINACIÓN DE SOLICITAR EL *INJUNCTION* ESTATUTARIO POR ESTORBOS PÚBLICOS.

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE EL TÉRMINO DE TREINTA (30) DÍAS PARA NOTIFICAR A LOS TITULARES DE SU DETERMINACIÓN ES UN TÉRMINO FATAL, JURISDICCIONAL E INSUBSANABLE Y NO HABER CONCEDIDO UN TÉRMINO RAZONABLE PARA PRESENTAR EVIDENCIA DE LA RATIFICACIÓN DEL CONSEJO LUEGO DE HABER DETERMINADO, EN LA SENTENCIA, QUE EL PRESIDENTE Y LA JUNTA DE DIRECTORES REQUERÍAN NOTIFICACIÓN Y AUTORIZACIÓN DEL CONSEJO.

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR EL CASO POR NO AGOTAR REMEDIO EN DRNA CUANDO LA DEMANDANTE ALEGÓ FUTILIDAD Y PROCEDÍA EL RELEVO.

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR EL CASO A PESAR DE HABER DETERMINADO QUE LAGUNA PLAZA ESTABLECIÓ LOS ELEMENTOS CONSTITUCIONALES Y ESTATUTARIOS BAJO EL ART. 277 DEL CÓDIGO DE ENJUICIAMIENTO CIVIL POR LO QUE PROCEDÍA ERA CONTINUAR CON "DESCUBRIMIENTO DE PRUEBA".

Examinado el recurso en su totalidad y, con la comparecencia de todas las partes en aras de lograr el más justo y eficiente despacho, procedemos a establecer el derecho aplicable y resolver.

**II**

*-A-*

Como regla general, un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, ni tiene facultad para sustituir las determinaciones del foro primario por sus propias apreciaciones. *Pueblo v. De Jesús Mercado,* 188 DPR 467, 478 (2013). Las decisiones de los tribunales de instancia merecen gran flexibilidad y deferencia, debido a que es el foro que conoce las particularidades del caso. *Citibank et al. v. ACBI et al.,* 200 DPR 724, 735 (2018). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas resulten arbitrarias o en un abuso de su discreción. *BPPR v. SLG Gómez-Alayón,* 213 DPR__ (2023); 2023 TSPR 145. Por tanto, los foros apelativos no deben pretender administrar ni manejar el curso ordinario de los casos ante el Tribunal de Primera Instancia. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434 (2013).

No obstante, la discreción ha de ceder cuando se configura: (1) un claro abuso de discreción, (2) el tribunal actuó con prejuicio o parcialidad o (3) el tribunal se equivocó en la interpretación o aplicación de una norma procesal o de derecho sustantivo. *BPPR v. SLG Gómez-Alayón, supra.*

El adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad. La discreción es, pues, una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Pueblo v. Sánchez González,* 90 DPR 197, 200 (1964). El abuso de discreción se puede manifestar de varias maneras en el ámbito judicial. *Pueblo v. Ortega Santiago,* 125 DPR 203, 211 (1990).

Para determinar si un tribunal incurrió en craso abuso de discreción, se deben considerar los siguientes criterios: (1) el juez no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (2) el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en él, o (3) a pesar de tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez sopesa y los calibra livianamente. *Pueblo v. Custodio Colón*, 192 DPR 567, 589 (2015).

El Tribunal de Apelaciones no debe elaborar sobre la pasión, el prejuicio y la parcialidad si no puede fundamentar que esto ocurrió en el caso ante su consideración. *Gómez Márquez v. Periódico el Oriental Inc.,* 203 DPR 783, 785 (2020). En casos en que el Tribunal de Instancia incurra en pasión, prejuicio, error manifiesto, y, por ende, en abuso de discreción, las situaciones reseñadas impiden que se le conceda la deferencia que como regla general se le confiere. Esto se hace necesario para no incurrir en una injusticia. *Pueblo v. De Jesús Mercado, supra*, pág. 780.

### -B-

En general, los tribunales tienen la obligación y responsabilidad de decidir los casos que se le presentan ante su consideración, incluso aquellos que con gusto evitaría. No obstante, como doctrina de autolimitación y de prudencia en el ejercicio del Poder Judicial, los tribunales solo pueden resolver aquellas controversias que sean justiciables. *Hernández Montañez v. Parés Alicea,* 208 DPR 727, 738 (2022). El concepto de justiciabilidad "impone el deber de examinar si los casos que traban una controversia de índole constitucional cumplen con determinados e indispensables requisitos previo a una expresión". *Noriega v. Hernández Colón,* 135 DPR 406, 420 (1994). Lo anterior, pues, "los

tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen un interés real en obtener un remedio que haya de afectar sus relaciones jurídicas". *ELA v. Aguayo*, 80 DPR 552, 558-559 (1958). Por consiguiente, para poder ejercer de forma válida nuestra facultad de interpretar la ley, es necesario que el caso presente una controversia auténtica, definida y concreta, dentro de un contexto adversativo. De lo contrario, procede la desestimación del recurso presentado porque, como no existe una controversia real entre los litigantes, el tribunal debe abstenerse de adjudicarlo.

El Tribunal Supremo de Puerto Rico ha resuelto que una controversia no es justiciable en las siguientes circunstancias, a saber: (1) cuando la cuestión a resolver es una cuestión política; (2) cuando el pleito no está maduro; (3) cuando, después de iniciado el pleito, hechos posteriores lo convierten en académico; (4) cuando lo que se procura obtener es una opinión consultiva; y **(5) cuando las partes no poseen legitimación activa para incoar la acción presentada**. *Noriega v. Hernández Colón, supra*, pág. 421.

*-C-*

En nuestro ordenamiento jurídico, la doctrina de agotamiento de remedios administrativos es una norma de autolimitación judicial que se circunscribe a que los tribunales, discrecionalmente, se abstengan de revisar la actuación de una agencia hasta tanto la parte afectada por dicha actuación agote todos los remedios administrativos disponibles, de manera tal, que la determinación administrativa refleje la postura final de la agencia. *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1057 (2013). De ordinario, su aplicación se realiza en aquellos casos en los cuales una parte, que instó o tiene instada alguna acción ante una agencia u organismo administrativo, recurre a algún tribunal sin antes haber completado todo el trámite administrativo disponible. *Procuradora Paciente v. MCS*, 163 DPR

21, 35 (2004). La misma se invoca para cuestionar la acción judicial de un litigante que acudió originalmente a un procedimiento administrativo o era parte de éste y que luego recurrió al foro judicial, aunque aún tenía remedios administrativos disponibles. *Mun. de Caguas v. AT&T*, 154 DPR 401, 408 (2001).

La necesidad de agotar los remedios administrativos antes de acudir al foro judicial es un requisito jurisdiccional que impide la intervención judicial hasta tanto no hayan sido agotados todos los remedios administrativos disponibles al nivel de la agencia. *Guzmán y otros v. ELA*, 156 DPR 693, 714 (2002). Esto es así, pues la determinación administrativa es la que reflejará la postura final de la agencia. De ahí que sea de particular importancia diferenciar los propósitos que persiguen las doctrinas de jurisdicción primaria y la de agotamiento de remedios administrativos. Sobre el particular, el Tribunal Supremo de Puerto Rico expresó lo siguiente:

> La doctrina de jurisdicción primaria no debe confundirse con la que requiere que se agoten los procedimientos administrativos antes de acudirse a los tribunales, aunque ambas son hermanas y persiguen el mismo fin: poner orden en la administración de la justicia y armonizar el funcionamiento de la rama judicial con el de su rama hermana, la ejecutiva. La doctrina que requiere que se agoten los procedimientos administrativos determina la etapa en la cual el litigante puede recurrir a los tribunales; la de la jurisdicción primaria determina qué organismo debe hacer la determinación inicial del asunto.
> *E.L.A. v. 12,974.78 metros cuadrados*, 90 DPR 506, 513 (1964).

De esta forma, la agencia administrativa puede: (1) desarrollar un historial completo del asunto; **(2) utilizar el conocimiento especializado o *expertise* de sus funcionarios para adoptar las medidas correspondientes de conformidad con la política pública formulada por la entidad,** y (3) aplicar uniformemente sus poderes para poner en vigor las leyes, rectificar oportunamente sus errores o reconsiderar el alcance de sus pronunciamientos. *AAA v. UIA*, 200 DPR 903, 914 (2018). **Por tanto, la doctrina de**

**agotamiento de remedios administrativos no puede ser preterida**, salvo que se configure alguna de las limitadas excepciones, a saber:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o **cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos,** o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa.

3 LPRA sec. 9673 (énfasis suplido).

A luz de lo anterior, se ha establecido que "la parte que pretende acudir al foro judicial [debe] probar, **mediante hechos específicos y bien definidos, que se debe prescindir de los remedios administrativos***". Oficina Paciente v. MCS,* 163 DPR 21, 36 (2004) (énfasis suplido). Esto, puesto que lo que pudiera resolver la agencia administrativa con relación a tales planteamientos constitucionales también estaría sujeto a ser revisado en su momento por el Tribunal de Apelaciones, de conformidad con lo dispuesto en la Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 9655.

*-D-*

Es una norma firmemente establecida que el recurso extraordinario de *injunction* es un mandamiento judicial en virtud del cual se requiere que una persona se abstenga de hacer, o de permitir que se haga, determinada cosa que infrinja o perjudique el derecho de otra. Este recurso fue adoptado del sistema de equidad inglés y se utiliza, principalmente, *en casos donde no hay otro remedio adecuado en ley.* Nuestro ordenamiento jurídico cuenta con tres modalidades de este tipo de recurso, a saber: el entredicho provisional, el *injunction* preliminar y el *injunction* permanente. *Next*

*Step Medical v. Bromedicom et al,* 190 DPR 474, 486 (2014). En ese contexto, el estado de derecho reconoce que el *injunction* estatutario es independiente del *injunction* tradicional, por lo que generalmente está exento de las exigencias legales que rigen a este último tipo de mecanismo. *Next Step Medical v. Bromedicom et al, supra,* pág. 486.

La norma reconoce que los requisitos para la ejecución del *injunction* tradicional son más rigurosos que los aplicables a aquel de índole estatutario. *Íd.,* pág. 486; *CBS Outdoor v. Billboard One, Inc.,* 179 DPR 391, 410 (2010). Ello obedece a que, en esencia, el interdicto tradicional se adoptó del sistema de equidad inglés para disponer de situaciones para cuya atención no existe remedio adecuado en ley. *Íd.,* pág. 410*; ARPe v. Rivera,* 159 DPR 429, 444 (2003).

De otro lado, el *injunction* estatutario*,* tiene su origen en un mandato legislativo expreso. *ARPe v. Rivera, supra,* pág. 444; *Plaza Las Américas v. N&H,* 166 DPR 631, 650 (2005). Por ello, contrario al interdicto tradicional, su concesión "requiere un tratamiento especial, enmarcado en un escrutinio judicial más acotado." *Next Step Medical v. Bromedicom et al, supra,* pág. 497. Según la interpretación normativa vigente, este tipo de interdicto especial procura que se obtenga una orden para paralizar, ya sea de forma inmediata, provisional o permanente, la ejecución de determinada conducta contraria a los términos de ley. J. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* 2da ed., Estados Unidos., Pubs. JTS, 2011, T. V, pág. 1672.

Por tanto, al interponerse una solicitud de *injunction* de esta naturaleza, "[no] se requiere alegación ni prueba de daños irreparables, [sino] solo la determinación de que el demandado ha violado las disposiciones de la ley." *ARPe v. Rivera, supra,* pág. 444. Así, la parte promovente de un *injunction estatutario,* debe acreditar ante el foro competente que: 1) existe una ley o reglamento que

regula el uso o actividad en disputa y que; 2) los demandados están haciendo uso o realizando una actividad en violación a la ley o reglamento. J. Cuevas Segarra, *op. cit.*

Finalmente, el Tribunal Supremo de Puerto Rico ha establecido los criterios necesarios para la concesión de un *injunction*, a saber: (a) la naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el *injunction*; (b) *su irreparabilidad o la existencia de un remedio adecuado en ley*; (c) la probabilidad de que la parte promovente prevalezca en los méritos; (d) la probabilidad de que la causa se torne académica; (e) el posible impacto sobre el interés público. *Next Step Medical v. Bromedicom et al, supra,* pág. 487; *Asoc. Vec. V. Caparra v. From. Educ.* 173 DPR 304, 319 (2008); *PR Telephone Co. v. Tribunal Superior,* 103 DPR 200, 202 (1975).

Así pues, **"[l]a concesión del remedio descansará en la *sana discreción* judicial, que se ejercerá al considerar tanto los intereses como las necesidades de las partes involucradas en el caso"**. Este debe expedirse con mesura y únicamente ante una demostración de clara e inequívoca violación de un derecho. En atención a ello, la determinación del tribunal no se revocará en apelación, a menos que se demuestre que el foro abusó de su facultad. *Next Step Medical v. Bromedicom et al, supra,* pág. 488.

### -E-

La Ley Núm. 129 de 16 de agosto de 2020, también conocida como "Ley de Condominios de Puerto Rico, según enmendada, 31 LPRA sec. 1921, fue promulgada con el propósito de establecer un régimen jurídico que facilitara la vida en convivencia dentro de un área restringida de viviendas. *Exposición de Motivos,* Ley Núm. 129-2020. Como parte del funcionamiento ordenado que debe permear en el régimen de propiedad horizontal, es menester señalar que el titular de un apartamento sometido al Régimen de Propiedad

Horizontal tiene el derecho al pleno disfrute de su apartamento y de las áreas comunes, siempre que con ello no menoscabe el derecho de los demás titulares al disfrute de sus respectivas propiedades. 31 LPRA 1921a.

Ahora bien, el artículo 48 de la precitada ley, destaca la finalidad del Consejo de Titulares. Veamos:

> **El Consejo de Titulares constituye la autoridad suprema sobre la administración del inmueble sometido al Régimen de Propiedad Horizontal. Estará integrado por todos los titulares**. Sus resoluciones y acuerdos, adoptados en asambleas debidamente convocadas y constituidas, serán de ineludible cumplimiento por todos y cada uno de los titulares, ocupantes o residentes y demás personas que se relacionen con el condominio.
> **El Consejo de Titulares tendrá personalidad jurídica propia** y de sus obligaciones frente a terceros, responderán los titulares de forma subsidiaria y sólo con su apartamento. [...]

31 LPRA sec. 1922t. (Énfasis suplido).

La jurisprudencia del Tribunal Supremo de Puerto Rico ha destacado que "[l]a responsabilidad fundamental de la Junta de Directores "estriba en velar por el buen funcionamiento del condominio logrando que se ejecuten las disposiciones de la Ley de Propiedad Horizontal, la de la Escritura Matriz, del Reglamento del Condominio, así como los acuerdos que se hayan aprobado en reuniones debidamente convocadas por el Consejo de Titulares". M.J. Godreau, *Personalidad jurídica, legitimación activa y propiedad horizontal: capacidad legal de la Junta de Directores y del presidente para llevar acciones a nombre del condominio*, 64 (Núm. 3) Rev. Jur. UPR 481, 481 (1995). *Consejo Titulares v. Gómez Estremera*, 184 DPR 407, 418 (2012)

El Consejo de Titulares está definido como: "Órgano rector y deliberativo del condominio, con personalidad jurídica y constituido por todos los titulares". 31 LPRA sec. 1921h. Es decir, el Consejo de Titulares está integrado por todos los titulares y constituye la autoridad suprema sobre la administración del inmueble sometido al régimen de propiedad horizontal. Este goza de personalidad

jurídica y por medio de su existencia hace viable la administración de las áreas comunes del inmueble por todos los titulares. A tenor con lo anterior, la finalidad del Consejo de Titulares consiste en propender al mejor funcionamiento del sistema de propiedad horizontal, a la vez que protege los intereses de sus miembros; es decir, el de los titulares frente a la comunidad y a terceros. *Consejo Titulares v. Ramos Vázquez*, 186 DPR 311,326 (2012).

Adicionalmente, la Ley Núm. 129-2020, *supra*, expresamente destaca que el Presidente, como representante del Consejo de Titulares, podrá representar en un juicio o en asuntos que afecten a los titulares. En específico, el artículo 54 dictamina los Poderes y deberes del Presidente de la Junta de Directores de la siguiente manera:

> **El Presidente representará en juicio y fuera de él a la comunidad en los asuntos que la afecten y presidirá las asambleas del Consejo de Titulares**. Comparecerá a nombre del condominio para otorgar las escrituras y demás documentos en los que el Consejo de Titulares sea parte. El Presidente podrá tener a las personas que entienda necesario para que lo asistan en el proceso de presidir la asamblea.

> **Cuando se trate de acciones para hacer cumplir ésta o cualquier otra ley aplicable,** el reglamento del Condominio o los acuerdos del Consejo de Titulares, o cuando el Consejo de Titulares o la Junta de Directores, en representación de éste, deba comparecer en pleito como demandado o querellado, **el Presidente podrá comparecer a nombre de dichos organismos y presentar las acciones y defensas que estime procedentes, seleccionando la representación legal que estime conveniente, <u>previa consulta a la Junta</u>. <u>De las acciones tomadas, deberá notificar a los titulares dentro de los treinta (30) días siguientes.</u>**
> [...]

> **En todo caso, se presumirá que el Presidente de la Junta de Directores cuenta con la autorización del Consejo de Titulares para comparecer a nombre de éste en los foros pertinentes.**

> 31 LPRA sec. 1922z. (Énfasis suplido).

### III

En el presente caso, Laguna Plaza nos solicita que revoquemos la *Sentencia* del Tribunal de Primera Instancia, Sala de San Juan, donde se desestimó su causa de acción. Por estar

inexorablemente atados discutiremos los errores del uno (1) al cuatro (4) en conjunto.

Señala la parte apelante que erró el Tribunal de Primera Instancia al celebrar una vista evidenciaria para que Laguna Plaza probara que el presidente estaba autorizado para representar al consejo de titulares y al conferir legitimación activa a las codemandadas-apeladas para impugnar la decisión de la Junta de Directores de Laguna Plaza de solicitar un *injunction* en representación del Consejo de Titulares. De igual forma señala que erró el foro de primario al determinar que la Junta de Directores no tenía facultad para solicitar *injunction* estatutario por estorbos públicos en representación de titulares del consejo de Laguna Plaza.

Por otro lado, señala que incidió el foro primario al determinar que el presidente y la junta de directores no notificaron a los titulares dentro de los treinta días siguientes a la determinación de solicitar el *injunction* estatutario por estorbos públicos. Finalmente sostiene que erró el Tribunal de Primera Instancia al determinar que el término de treinta (30) días para notificar a los titulares de su determinación es un término fatal, jurisdiccional e insubsanable y no haber concedido un término razonable para presentar evidencia de la ratificación del consejo luego de haber determinado, en la sentencia, que el presidente y la junta de directores requerían notificación y autorización del consejo. *No le asiste la razón.*

Como parte del artículo 54 de la Ley Núm. 129-2020, *supra,* se destaca que el Presidente representará en juicio y fuera de él a la comunidad, en los asuntos que la afecten al Consejo de Titulares, es una función inherente a su cargo. Expresamente la ley dispone que cualquier acción que sea llevaba a cabo por la Junta de Directores o su Presidente en el ejercicio inherente de sus facultades, **deberá ser notificada a los titulares dentro de los treinta (30) días siguientes**. Como podemos observar, el texto de la

Ley es claro y libre de ambigüedad, la Junta de Directores, tenía la ineludible obligación de notificar al Consejo de Titulares de la radicación de la causa de acción, toda vez que la legitimación activa de la Junta de Directores es una delegación limitada de la personalidad jurídica del Consejo de Titulares. Como parte del texto de la precitada ley, se presume que el presidente de la Junta de directores cuenta con la autorización del Consejo de Titulares para comparecer a nombre de éste en los foros pertinentes. Ahora bien, adviértase que dicha presunción es de carácter iuris tantum, por lo que permite que se presente prueba que rebata la presunción. Es decir, que en todo caso donde se cuestione si se tiene autorización del Consejo de Titulares, el presidente y la Junta de Directores tienen el peso de la prueba para demostrar que cuentan la autorización requerida.

Como parte de la prueba desfilada por la apelante, se puede extraer de la transcripción de la Vista del Juicio en su fondo, según el interrogatorio realizado, donde el señor Edwin Pérez, secretario de la Junta de Titulares, **admitió que la Junta de directores decidió unánimemente radicar la acción que nos ocupa.[16]** Sin embargo, se desprende de dicho testimonio que la acción no fue notificada ni autorizada a los residentes de Laguna Plaza. Por lo que es forzoso concluir que no erró el Tribunal de Primera Instancia.

De igual forma argumenta la parte apelante, que incidió el foro apelado al determinar que la Junta de Directores no podía solicitar un *injunction* estatutario en representación del Consejo de Titulares. La génesis de dicho planteamiento se circunscribe en esencia al elemento de la notificación y autorización por parte del Consejo de Titulares.  La Ley Núm. 129-2020, **exige** que la acción incoada, sea un recurso ordinario, extraordinario o administrativo, sea notificado

---

[16] Transcripción de la Vista, MC2022-102, págs. 84/215, líneas 8-13.

dentro de un plazo de treinta (30) días al Consejo de Titulares.[17] En el caso de marras, **la Junta de Directores no notificó la acción al Consejo de Titulares, dicho hecho fue admitido bajo juramento en el Tribunal de Primera Instancia**. Por lo que es forzoso concluir que no erró el Tribunal de Primera Instancia. *No se cometió el error señalado.*

El tercer señalamiento de error, el apelante señala que el foro primario incidió al determinar que no se notificó dentro de los treinta (30) días siguientes a la presentación de la acción. Tal como señalamos previamente, según el testimonio del señor Edwin Pérez y según se desprende del testimonio del señor Lépido Botello, administrador del condominio, **este admitió que no se había notificado al Consejo de Titulares de la acción que se estaba dilucidando ante la Sala del Tribunal de Primera Instancia.** Surge del interrogatorio que, a preguntas de la representación legal de la parte apelante, el señor Lépido Botello contestó lo siguiente:

> P: [...] Le pregunto, ¿qu[é] notificaciones, si alguna, usted la envió a los titulares—a los titulares sobre la decisión que tomó la Junta para presentar esta acción legal[¿]
>
> R: Se notificó, **según indiqué <u>hace unos minutos</u> <u>a través del chat del condominio,</u> de los titulares**.[18]

> [...]

A preguntas de la parte apelada, se desprende del testimonio del señor Lépido Botello lo siguiente:

> P: [...] Entonces, entiendo por lo que me está diciendo, que[,][¿] como parte de los registros de los titulares, **la notificación de asuntos formales, se puede dar por WhatsApp también**?
>
> R: **No**.[19]

(Énfasis suplido).

---

[17] *Íd.*

[18] Índice del Apéndice del Recurso de Apelación, Transcripción de Vista MC-2022-102, testimonio señor Lépido Botello, págs. 116/215, líneas 5-9.

[19] *Íd.* págs. 120/215, líneas 4-7.

Como podemos observar y según se desprende del testimonio del señor Botello, el pleito de epígrafe comenzó el 3 de enero de 2023. A la fecha del interrogatorio realizado el día del juicio en su fondo, es decir, el 14 de abril de 2023, el señor Botello contestó que, en efecto, no se había realizado tal notificación al Consejo de Titulares, **es decir tres (3) meses después de iniciado el pleito, no se había emitido una notificación formal por parte de la Junta de Directores hacia el Consejo de Titulares**. La notificación de la causa de acción fue realizada durante el mismo día del Juicio en su Fondo, por un medio de comunicación informal, minutos antes de iniciar su interrogatorio. Esta acción por parte del señor Botello no cumple con la disposición que exige el artículo 54 de la Ley Núm. 129-2020. Tampoco sostiene la presunción de autorización para que el Presidente compareciera a nombre de la Junta de Directores con autorización del Consejo de Titulares en la causa de acción instada, toda vez que el Consejo de Titulares nunca fue notificado de la acción incoada por la Junta de Directores. Por lo que es forzoso concluir que no erró el Tribunal de Primera Instancia en el error señalado.

En el cuarto error relacionado a la controversia de la notificación, Laguna Plaza señala que incidió el foro primario al determinar que el término de treinta (30) días para la notificación al Consejo de Titulares, era un término fatal, jurisdiccional e insubsanable. Aduce además que erró el foro primario al no haberle concedido un término adicional para presentar evidencia de la ratificación de este, luego de haber determinado que el presidente y la Junta requerían notificación y autorización del Consejo de Titulares. *No les asiste la razón.*

El término en la precitada Ley Núm129-2020, en su artículo 54 establece expresamente que *"[...]* ***de las acciones tomadas, deberá notificar a los titulares dentro de los treinta (30) días***

*siguientes*". 31 LPRA sec. 1922z. Como se puede observar, en el lenguaje de la ley no se hace referencia si este término es uno de estricto cumplimiento o es uno jurisdiccional. El Tribunal Supremo de Puerto Rico ha resuelto que cuando no se especifica el tipo de término, es decir, si es un término de estricto cumplimiento o de carácter jurisdiccional, éste será de estricto cumplimiento. *Benítez Nieves v. ELA*, 202 DPR 818, 827 (2019), citando a *In re-Godínez Morales*, 161 DPR 219, 237 (2004).

Se puede destacar que "[e]l término de cumplimiento estricto se sitúa entre los términos prorrogables y los improrrogables. Estos pueden prorrogarse siempre y cuando exista una justa causa". *Rivera Marcucci v. Suiza Dairy,* 196 DPR 157,158 (2016). Es menester señalar que "**[l]os tribunales no gozan de discreción para prorrogar los términos de cumplimiento estricto automáticamente**. Así pues, es el foro adjudicativo quien tiene discreción para extender un término de cumplimiento estricto solo cuando la parte que lo solicita demuestre justa causa para la tardanza. **Al ser así pues, se le exige a quien solicita la prórroga o a quien actúe fuera del término que presente justa causa por la cual no puede o pudo cumplir con el término establecido.** *Id.* pág. 158. De esta forma es que "[l]os tribunales podrán eximir a una parte de observar el cumplimiento con un término de este tipo únicamente si concurren las condiciones siguientes: (1) que en efecto exista justa causa para la dilación y (2) que la parte le demuestre detalladamente al tribunal las bases razonables que tiene para la dilación, es decir, que acredite de manera adecuada la justa causa aludida". *Rivera Marcucci v. Suiza Dairy, supra*, pág.171. Ante la ausencia se las condiciones precitadas, es forzoso concluir que Laguna Plaza no demostró que hubiera justa causa para la dilación en la notificación al Consejo de Titulares. Tampoco solicitaron un plazo ni demostraron detalladamente cual fue la justa causa para la

dilación aludida. Así las cosas, era deber de Laguna Plaza acreditar la existencia de justa causa la tardanza en la notificación al Consejo de Titulares, incluso antes de que el tribunal lo requiriera.

Señala erradamente Laguna Plaza que el Tribunal de Primera Instancia tenía obligación de concederle un término para notificar la acción tardíamente al Consejo de Titulares. El Tribunal de Primera Instancia no tenía que conceder a los apelantes un término razonable para presentar evidencia de la ratificación posterior a la sentencia. Toda vez que no se acreditó que hubo justa causa para dicha tardanza durante el término dispuesto por la Ley Núm.129-2020 y más, cuando la falta de notificación fue promovida por la propia parte apelante por más de tres (3) meses luego de la radicación del pleito. De la misma forma, la solicitud de un término adicional tampoco fue realizada oportunamente. No le correspondía al Tribunal brindarle oportunidad a la Junta de Directores para subsanar su falta de legitimación activa. Es harto conocido y como un principio cardinal, en nuestro sistema adversativo, el derecho es rogado, y corresponde a la parte que pueda afectarse, solicitar lo que en derecho proceda. *SLG v. Srio. De Justicia*, 152, DPR 2, 8 (2000). *No se cometió el error señalado.*

Laguna Plaza señala que incidió el Tribunal de Primera Instancia al desestimar el caso por no agotar remedio en DRNA cuando la demandante alegó futilidad y procedía el relevo. *No le asiste la razón.*

Laguna Plaza arguyó que no habían radicado ninguna querella en el Departamento de Recursos Naturales, toda vez que según alegaron, le informaron en la JCA que no había sonógrafos disponibles para horarios no laborables. La parte apelante justifica que haber iniciado la acción en el foro primario fue suficiente para preterir el trámite de la agencia administrativa toda vez "que fue la propia agencia que [les] notificó que presentar la querella sería fútil

porque no contaban con técnicos que investigaran y midieran los decibeles. La propia agencia nos envió al Tribunal de Primera Instancia".[20]

Laguna Plaza adujo que, esta notificación al foro primario fue suficiente para que el Tribunal de Primera Instancia emitiera una orden a la JCA y ordenara que un técnico acudiera al área de George para que midiera los decibeles del ruido. Sin embargo, conforme a la doctrina de agotamiento de remedios administrativos, Laguna Plaza concluyó *motu proprio* que era un ejercicio fútil, por lo que procedía iniciar un procedimiento ante el foro judicial. Así pues, lo que correspondía era que Tribunal emitiera una orden a la JCA para el proceso de descubrimiento de prueba, aun en ausencia de procedimientos y querellas administrativas ante la JCA. Laguna Plaza nunca presentó evidencia de haber iniciado ni realizado reclamaciones ante la JCA.

Como parte de la doctrina de agotamiento de remedios, los tribunales discrecionalmente se abstienen de revisar una actuación de una agencia, hasta que se agoten dichos remedios administrativos para poder revisar la actuación final de una agencia. El principio cardinal de esta acción estriba en evitar una intervención indebida, inoportuna y a destiempo sobre la agencia hasta tanto no culmine el trámite del procedimiento administrativo. A su vez brindar total deferencia en el conocimiento especializado o *expertise* de sus funcionarios para adoptar las medidas correspondientes de conformidad con la política pública formulada por la entidad. En este caso, el tribunal no estuvo en posición de revisar un trámite administrativo, toda vez que Laguna Plaza ni siquiera inició el proceso administrativo. Por otro lado, la parte apelante no presentó prueba que sustentara dichas alegaciones. Si

---

[20] Recurso de Apelación, pág. 16.

bien el artículo 277 del Código de Enjuiciamiento Civil no exige la presentación de prueba pericial, lo cierto es que la controversia alegada por Laguna Plaza estriba sobre la medición de decibeles, por lo que es forzoso concluir que correspondía a la parte apelante poner en posición al Tribunal de Primera Instancia para que emitiera un juicio sobre la prueba vertida. *No se cometió el error señalado.*

Por último, señala la parte apelante que erró el foro primario al desestimar el caso a pesar de haber determinado que Laguna Plaza estableció los elementos constitucionales y estatutarios bajo el artículo 277 del Código de Enjuiciamiento Civil por lo que procedía era continuar con "descubrimiento de prueba". *No les asiste la razón.*

El artículo 277 del Código de Enjuiciamiento Civil, *supra,* en esencia dispone que […] "**Dicha acción podrá ser promovida por cualquiera persona**, agencia pública o municipio cuyos bienes hubieren sido perjudicados o cuyo bienestar personal resulte menoscabado por dicho estorbo público; y la sentencia podrá ordenar que cese aquella, así como decretar el resarcimiento de los perjuicios […]32 LPRA 2761. Como se puede observar el artículo precitado brinda legitimación a cualquier persona. Sin embargo, según discutido previamente, la Junta de Directores no tiene una personalidad jurídica propia y debe actuar a nombre del Consejo de Titulares. Esto necesariamente implica que se cumpliera con el requisito de notificación de la acción a los residentes de Laguna Plaza exigido en el artículo 54 de la Ley Núm. 129-2020. No procedía continuar con un procedimiento de descubrimiento de prueba cuando la Junta de Directores carecía de legitimación activa. Por lo que es forzoso concluir que procedía era desestimar la demanda de autos. *No se cometió el error señalado.*

**IV**

Por los fundamentos antes expresados, los cuales hacemos formar parte de este dictamen, se confirma la *Sentencia* apelada y dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones